IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2016

## STATE OF TENNESSEE v. TORY HARDISON

**Direct Appeal from the Circuit Court for Giles County
No. 16333     J. Russell Parkes, Judge**

---

**No. M2015-01188-CCA-R3-CD – April 6, 2017**

---

The Appellant, Tory Hardison, pled guilty in the Giles County Circuit Court to the sale of .5 grams or more of cocaine, the sale of less than .5 grams of cocaine, the possession of .5 grams or more of cocaine with the intent to sell, and the possession of alprazolam with the intent to sell. Pursuant to the plea agreement, the Appellant received a total effective sentence of twenty years, which was suspended to community corrections. Thereafter, the trial court revoked the Appellant's community corrections sentences for failure to comply with the terms of release and ordered the Appellant to serve his original sentences in confinement. On appeal, the Appellant contends that his judgments of conviction are illegal and cannot be revoked. In the alternative, he contends that the trial court abused its discretion by revoking his community corrections sentences and ordering him to serve his sentences in confinement. Upon review, we conclude that the case must be remanded to the trial court for entry of corrected judgments. The judgments of the trial court are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed; Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

A. Colbrook Baddour, Pulaski, Tennessee, for the Appellant, Tory Hardison.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Brent A. Cooper, District Attorney General; and Jonathan W. Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

# I. Factual Background

The record reflects that the Appellant was charged in case number 16333 with three counts of the sale of less than .5 grams of cocaine within a drug-free school zone and with two counts of the sale of .5 grams or more of cocaine within a drug-free school zone. In case number 16491, the Appellant was charged with possession of .5 grams or more of cocaine with the intent to sell, possession of marijuana, and possession of alprazolam.

On October 29, 2013, the Appellant pled guilty pursuant to a written plea agreement whereby counts one and three of case number 16333 and count two of case number 16491 were dismissed and the school-zone enhancement was also dismissed. The written plea agreement provided that the Appellant would plead guilty as follows:

| Case No. | Count | Offense | Class | Sentence |
|---|---|---|---|---|
| 16333 | 1 | sale less than .5 g. cocaine within a drug-free school zone | | dismissed |
| 16333 | 2 | sale .5 g. or more cocaine | B felony | 8 years |
| 16333 | 3 | sale .5 g. or more cocaine within a drug-free school zone | | dismissed |
| 16333 | 4 | sale less than .5 g. cocaine | C felony | 4 years consecutive to count 1 of case number 16333 |
| 16333 | 5 | sale less than .5 g. cocaine in a drug-free school zone | | dismissed |
| 16491 | 1 | possession .5 g. or more cocaine with intent to sell | B felony | 8 years consecutive to count 4 of case number 16333 |
| 16491 | 2 | possession of marijuana | | dismissed |
| 16491 | 3 | possession of alprazolam | D felony | 4 years concurrent with count 1 of case number 16333 |

The Appellant was sentenced as a Range I, standard offender to a total effective sentence of twenty years, which was suspended, and he was placed on community corrections.

On September 22, 2014, a warrant was issued alleging that the Appellant had violated the rules of community corrections by not reporting to his case officer. According to the warrant, the Appellant had not reported since August 18, 2014, despite having failed to report on a previous occasion and being warned about the consequences

of the failure to report. The warrant also stated that the Appellant had been arrested twice for driving on a revoked license and once for failure to appear, that he had failed to report the new arrests, that he had failed to provide verification he had paid court costs, that he had failed to provide verification of employment despite warnings to do so, and that he was $165 in arrears for supervision fees. On November 17, 2014, an amended violation warrant was issued based upon the Appellant's arrest in Giles County for possession of drug paraphernalia, "schedule IV drug violations, simple possession, and schedule II drug violations (x4)."

Jason Wallace testified at the revocation hearing that he had worked with the community corrections program for seven years before leaving in August 2013. He returned in April 2015 and had worked for approximately one and one-half months before the hearing. Wallace acknowledged that he had never met the Appellant. He explained that the individual who had supervised the Appellant was no longer working with the program. Wallace was familiar with the records related to the Appellant.

Wallace said that the Appellant's community corrections records revealed that he was convicted on October 29, 2013. Wallace said that generally every offender was advised of the rules of alternative sentencing when he began serving his sentence and that the offender signed a form acknowledging he had been advised of the rules. While on probation, an offender usually was required to report once a month; on community corrections, however, an offender had to report once or twice a week. The Appellant missed several meetings, and he received verbal and written warnings about his failure to report. At some point, the Appellant was considered to be "an absconder." The Appellant's last reporting date was August 18, 2014. Wallace said that the Appellant owed $165 in community corrections supervision fees and failed to provide proof that he had paid his court costs and fees. Despite receiving warnings, the Appellant failed to provide proof of employment. Additionally, the Appellant acquired new criminal charges and had failed to report the new charges to his case officer.

On cross-examination, Wallace stated that according to the records, the Appellant was arrested on new charges on July 1, 2014; July 26, 2014; and August 6, 2014. Wallace acknowledged that an offender could not report to his case officer while in jail. Wallace said an offender was required to pay a $15 fee each month he was under community corrections supervision. Wallace could not find a receipt indicating the Appellant had ever paid the monthly fee or any court costs. The Appellant's file contained a letter from the account manager for Magneti Marelli that stated the Appellant was working in a "temp-to-hire position" and that he had been assigned to the company by Staffmark. The letter was dated February 28, 2013, which was prior to the Appellant's being placed on community corrections. The file also contained a check stub from Staffmark for work performed from February 17 to February 23, 2014, which indicated the year on the letter was incorrect.

Wallace said that an offender who accrued a new charge was supposed to come to the office or call to advise his case officer of the new charge. The case officer was supposed to then put a note in the offender's file about the new charge. Wallace said that the Appellant's case officer "had a form that he used that not everybody in [the] offices uses." Wallace acknowledged that the Appellant's file contained several of the forms, that Wallace had not examined each of the forms, and that he did not know whether any of the forms "indicate[d] any information . . . about these new charges." Upon review, Wallace discovered a form which noted that on July 14, 2014, the Appellant told his case officer that he had been "pulled over" by law enforcement. Wallace said the notation may have referred to the Appellant's July 1, 2014 arrest for driving on a revoked license.

Wallace said that the Appellant's file reflected that he was booked into jail on October 14, 2014. He stated that the Appellant could have informed his case officer of the new charges by letter or telephone. From the file, Wallace determined that the Appellant had not failed a drug screen during his supervision.

Kenneth Bass, an investigator with the Pulaski Police Department, testified that the Giles County Sheriff's Department's web site reflected three instances in which the Appellant was booked into jail and released on the same day: July 1, 2014; July 26, 2014; and October 6, 2014. On October 14, 2014, the Appellant was booked into jail on new drug charges and had not been released.

Regarding the new charges, Investigator Bass said that in 2014, a confidential informant made four controlled purchases of cocaine from the Appellant. On February 26, he bought .77 grams; on March 4, he bought 1.69 grams; on March 11, he bought 1.16 grams; and on March 27, he bought .31 grams. Investigator Bass said the confidential informant had made other controlled purchases for the police, and Investigator Bass considered the confidential informant to be reliable. Investigator Bass noted that the confidential informant was not working with the police in order to mitigate any pending criminal charges but was paid by the police.

On cross-examination, Investigator Bass clarified that all of the transactions occurred in the front yard of the confidential informant's house, which was close to the street. Defense counsel asked if the confidential informant went inside the house prior to any of the transactions. Investigator Bass responded, "A few of them. I'm not sure on exactly which ones [the confidential informant] went to his actual house and sat and waited on the [Appellant] to show up." Investigator Bass acknowledged that the police did not search the confidential informant's house before the transactions and that the confidential informant possibly could have "stuck some cocaine in his pocket that he found in his house or that he had in his house."

Investigator Bass said that the confidential informant volunteered to help the police investigate several different people, one of whom was the Appellant. Investigator Bass had no reason to believe the confidential informant "might have an axe to grind against" the Appellant. Investigator Bass said that he usually paid informants $80 to $100 per transaction.

The confidential informant testified that on the morning of February 26, 2014, he met Investigator Bass at the police station, which was near the confidential informant's house. At the station, officers searched the confidential informant and equipped him with a recording device. He then called the Appellant. The Appellant drove to the front of the confidential informant's house and got out of his car. The confidential informant gave the Appellant money, and the Appellant gave the confidential informant some powder cocaine. The confidential informant did not recall the amount he paid for the cocaine.

The confidential informant said that on March 4, 11, and 27, 2014, he obtained cocaine from the Appellant in transactions that occurred essentially the same as the earlier transaction. On all four occasions, the Appellant drove to the confidential informant's house, and they had "a hand-to-hand transaction." After each transaction, the confidential informant gave the cocaine to Investigator Bass. The confidential informant said that he did not make any stops before meeting with Investigator Bass.

On cross-examination, the confidential informant said that he had used powder cocaine and heroin; however, he did not use drugs before any of the transactions with the Appellant and that he stopped using drugs around the beginning of 2015. The confidential informant said that he volunteered to help the police to avoid "falling right back into the drug situation."

The confidential informant said that he had a criminal history and that he was facing "charge[s]" for drugs and guns. He said that he carried a gun to protect himself from the Appellant's friends, who were upset with him. He explained that he had heard rumors that "people" were "looking for" him and planned to "get" him.

The confidential informant said that he did not go inside his house after being searched by the police but that he went to the side of the house and waited for the Appellant. After completing the transactions, he returned to the police station. The confidential informant said that he gave Investigator Bass all of the cocaine he bought from the Appellant.

The trial court found that the Appellant violated community corrections "on both a technical and nontechnical basis." The court found that the Appellant failed to pay fees and costs and that a few months after being granted community corrections, the Appellant sold cocaine on four occasions. The trial court said:

The fact is [the Appellant] was granted a plea agreement such that many of the underlying school zone cases essentially went away. He was granted the benefit of a community . . . corrections sentence. He failed miserably. He failed not once, not twice, not three times, but four times. He did it in the shadows of the city police department. . . . The [Appellant] was given significant and sufficient rope and the [Appellant] has hung himself. He has no one to blame but himself.

The trial court ordered the Appellant to serve his original sentences in confinement.

On appeal, the Appellant contends that his judgments are illegal; therefore, the trial court had no authority to revoke his community corrections sentences and order confinement. He contends that the appropriate remedy is to remand to the trial court for correction of the judgments and that he is entitled to a new revocation hearing.

## II.  Analysis

### A.  Errors in Judgments

The Appellant maintains that the judgments of conviction in count 4 of case number 16333 and count 1 of case number 16491 are illegal because the sentences in those counts were either to be served concurrently with or consecutively to a sentence in count 1 of case number 16333, which was dismissed pursuant to the plea agreement. The Appellant contends that this court should remand the case to the trial court for entry of amended judgments that "conform with the negotiated plea agreement" and for a second probation revocation hearing. The State responds that the errors in the judgments are clerical and that a second revocation hearing is not required. We agree with the State.

Tennessee Rule of Criminal Procedure 36 provides that "[c]lerical mistakes in judgments . . . may be corrected by the court at any time." The judgment of conviction for count 1 in case number 16491 provides that the eight-year sentence is to be served consecutively to count one of case number 16333, which the State dismissed. Therefore, we must remand the case for entry of a corrected judgment reflecting that the sentence is to be served consecutively to the four-year sentence for count 4 in case number 16333, as is provided in the plea agreement.

Next, the judgments of conviction reflect that the four-year sentence for count 4 in case number 16333 was to be served consecutively to the sentence for count 1 in case number 16333 and that the four-year sentence in count 3 in case number 16491 was to be

served concurrently with the sentence in count 1 of case number 16333. The Appellant asks that the case be remanded for entry of corrected judgments that conform with the written plea agreement. Notably, the judgments for count 4 in case number 16333 and count 3 in case number 16491 do conform with the terms of the written plea agreement. However, the written plea agreement also provides that count 1 of case number 16333 was to be dismissed. Clearly, both the written plea agreement and the judgments of conviction contain clerical errors. Accordingly, we must remand to the trial court for entry of corrected judgments reflecting that the sentence for count 4 in case number 16333 is to be served consecutively to count 2 of case number 16333 and count 3 in case number 16491 is to be served concurrently with the eight-year sentence for count 2 in case number 16333. The resulting total effective sentence of twenty years is consistent with the sentence set out in the plea agreement.

### B. Community Corrections

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101. The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

On appeal, the Appellant contends that the trial court abused its discretion by finding that the Appellant violated the terms of community corrections. The Appellant maintains that his cross-examination of Wallace revealed that the Appellant was unable to report to his case officer or advise his case officer of new charges because the

Appellant was incarcerated in the Giles County Jail. He also contends that he had provided proof of employment to his case officer; therefore, the only ground for revocation was the Appellant's failure to pay his supervision fees. He argues that he was "only $165 behind in paying his supervision fees" and that the trial court should not have revoked the Appellant's community corrections sentences without proof that his failure to pay was willful.

Our review of the record belies the Appellant's contentions. Wallace testified that the Appellant was supposed to report to his case officer at least once a week. The Appellant failed to report from August 18, 2014, until the revocation warrant was filed on October 20, 2014. During that period, the Appellant was booked into jail on July 1, 2014; July 26, 2014; and October 6, 2014. On each occasion, the Appellant was released the same day. Therefore, until the Appellant was incarcerated without release on October 14, 2014, he was not impeded from reporting to his case officer.

The record also reveals that the Appellant failed to pay supervision fees of $15 per month and that the $165 was an arrearage of several months. Moreover, Investigator Bass and the confidential informant testified that the Appellant sold drugs to the confidential informant on four occasions while he was released on community corrections for multiple convictions relating to possessing and selling drugs. The trial court noted that despite receiving the largesse of alternative sentencing, the Appellant violated the terms of community corrections "on both a technical and a nontechnical basis" by failing to pay fines and court costs and by continuing to sell drugs. We conclude that the trial court did not abuse its discretion by revoking the Appellant's community corrections sentences.

Finally, this court has repeatedly stated that "an accused, already on [alternative sentencing], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). We conclude that the trial court did not abuse its discretion by revoking the Appellant's community corrections sentences and ordering him to serve the sentences in confinement.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE